IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEOPLE'S CAPITAL AND LEASING CORP., | § | |
| | § | |
| | § | |
| Plaintiff-counterdefendant, | § | |
| | § | |
| | § | Civil Action No. 3:08-CV-1026-D |
| VS. | § | |
| | § | |
| CIPRIANO MUNOZ, | § | |
| | § | |
| Defendant-counterplaintiff. | § | |
| | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff-counterdefendant People's Capital and Leasing Corp. ("PCLC") sues defendant-counterplaintiff Cipriano Munoz ("Munoz") to recover on his personal guaranty of a loan to Munoz Printing Company, Inc. ("MPCI"). Munoz asserts a counterclaim and various affirmative defenses. Both parties move for summary judgment. Concluding that PCLC has established beyond peradventure that it is entitled to recover from Munoz on his personal guaranty, and that a reasonable trier of fact could not find in Munoz's favor on his counterclaim and affirmative defenses, the court grants PCLC's motion for summary judgment, denies Munoz's motion, and enters judgment in favor of PCLC.

I

The material facts on which the court's decision turns are essentially undisputed.[1]   In November 2004 MPCI borrowed $1.55 million from PCLC (the "MPCI loan") to finance the purchase of a printing press.  Munoz, MPCI's owner and President, unconditionally guarantied the loan, signing an "Individual Guaranty."   The printing press served as collateral for the loan.[2]

In September 2007 MPCI effectively merged with another company, TS Printing Company, Inc. ("TSPC"), through a "Pre-Incorporation Agreement."[3]   Through this agreement, TSPC and MPCI formed a new corporation, TSP Funding, Inc. ("TSP Funding").  Munoz owned a minority interest in the new corporation, and Terry Slagle ("Slagle"), TSPC's President, owned 50%.   Slagle also became President of TSP Funding.

Unbeknownst to MPCI or Munoz, TSPC had an existing loan with PCLC (the "TSPC Loan") that was in default at the time.   In May

---

[1]There are, to be sure, disputed fact issues, but they are not *material* fact issues in light of the reasoning on which the court's ruling is based.

[2]Under the loan agreement, the collateral included the printing press "COMPLETE WITH ANY ALL ATTACHMENTS, ACCESSIONS, ADDITIONS, REPLACEMENTS, IMPROVEMENTS, MODIFICATIONS AND SUBSTITUTIONS THERETO AND THEREFOR AND ALL PROCEEDS INCLUDING INSURANCE PROCEEDS THERETO AND THEREFROM." P. July 2, 2009 App. 15.  The court will refer to the collateral by the shorthand term "printing press."

[3]PCLC and Munoz consistently refer to the Pre-Incorporation Agreement as constituting a "merger," so the court will treat the transaction as a merger.

- 2 -

2007, several months before the merger, PCLC had sued TSPC in this court to collect on the loan.  *See People's Capital & Leasing Corp. v. TS Printing Co.,* No. 07-CV-0787-K (N.D. Tex. filed May 2, 2007) (Kinkeade, J.) (the "2007 lawsuit").  To alleviate its financial problems, TSPC had sought a possible business opportunity with Textron Financial Corp. ("Textron"), a third party, but that opportunity fell through when Textron discovered the 2007 lawsuit in the public records.  TSPC next asked PCLC to release its priority lien on TSPC's accounts receivable, which the bank agreed to do in return for the execution by TSPC and MPCI of a cross-collateralization agreement.  The 2007 lawsuit was dismissed by agreement in March 2008.

In February 2008 TSPC and MPCI entered into a "Cross-Default and Cross-Collateral Agreement" with PCLC, pledging the collateral of each company for the obligations of the other (the "Cross-Collateral Agreement").  As part of the Cross-Collateral Agreement, Slagle and Munoz personally signed a document entitled "Consent of Guarantors," pledging to be personally liable.  Slagle worked directly with Jimmy J. Wallace ("Wallace"), who is PCLC's Vice President for Portfolio Administration.  Wallace sent the Cross-Collateral Agreement directly to Slagle, who arranged for Munoz to sign it.  Neither Wallace nor anyone else at PCLC communicated directly with Munoz about the Cross-Collateral Agreement, nor did anyone notify Munoz about the 2007 lawsuit or that TSPC had

previously defaulted on its loan with PCLC.

Subsequently, the financial position of the two companies worsened, and MPCI defaulted on the MPCI loan.[4] PCLC sues Munoz to enforce the Individual Guaranty that Munoz signed in November 2004, or, alternatively, to recover for breach of contract.[5] Munoz asserts various affirmative defenses,[6] contending that his obligation has been discharged because PCLC did not inform him of TSPC's precarious financial position before he signed the Cross-Collateral Agreement. Munoz maintains that PCLC had a duty to disclose such material adverse information, and, in failing to do so, excused Munoz from the obligations of his guaranty. Munoz also asserts a counterclaim for a declaratory judgment that PCLC's failure to disclose material adverse facts discharged him from any obligations under the MPCI loan.[7] Both sides move for summary

_____

[4]According to the summary judgment briefing, MPCI is bankrupt.

[5]Because the court concludes that PCLC is entitled to recover against Munoz on his guaranty, it need not consider PCLC's alternative claim for breach of contract.

[6]The defenses include common law fraud, fraudulent concealment, negligent misrepresentation, prior material breach, breach of the implied covenant of good faith and fair dealing, accord and satisfaction, want or failure of consideration, rescission, cancellation, ratification, promissory or equitable estoppel, discharge, release, and usury.

[7]In his summary judgment motion, Munoz refers to "counterclaims based on common law fraud and fraudulent non-disclosure." D. Mot. 1. PCLC also refers in its briefing to "Munoz's counterclaims." *E.g.,* P. July 13, 2009 Br. 12. In Munoz's third amended answer and counterclaim, he asserts a single

judgment.[8]

## II

The parties' summary judgment burdens depend on whether they are addressing a claim or defense for which they will have the burden of proof at trial.  To be entitled to summary judgment on a claim or defense for which it will have the burden of proof, a party "must establish 'beyond peradventure all of the essential elements of the claim or defense.'"  *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  "The court has noted that the 'beyond peradventure' standard is 'heavy.'"  *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

---

counterclaim for a declaratory judgment that he was discharged from any obligation under the Individual Guaranty by reason of common law fraud, fraudulent concealment, prior material breach, negligent misrepresentation, breach of the duty and/or implied covenant of good faith and fair dealing, detrimental reliance, and equitable or promissory estoppel.  The only relief requested is a discharge of the Individual Guaranty and an award of attorney's fees.  The court will therefore refer in this memorandum opinion and order to a single "counterclaim" that seeks the relief for which Munoz expressly pleads.

[8]In its opposition to Munoz's motion for summary judgment, PCLC requests in the alternative that the court strike Munoz's motion and brief, contending it is untimely.  Because the timing of Munoz's filings has not interfered with the decisional process of the court or prejudiced PCLC, the court denies the request to strike Munoz's motion.

- 5 -

When the summary judgment movant will not have the burden of proof on a claim or defense at trial, it need only point the court to the absence of evidence of any essential element of the opposing party's claim or defense. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, the nonmovant must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof as to any essential element renders all other facts immaterial. *Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmoving party fails to meet this burden. *Little*, 37 F.3d at 1076.

The court's subject matter jurisdiction in this case is based on diversity of citizenship. PCLC is a Connecticut corporation with its principal place of business in Connecticut. Munoz is a citizen of Texas. Both parties cite Texas and Fifth Circuit law in support of their motions. The MPCI loan agreement states, however, that the laws of Connecticut apply in any action or proceeding "arising out of or relating to this agreement or the transactions contemplated hereby." P. July 2, 2009 App. 13. Because this is a

diversity case, the court must apply the choice-of-law principles of Texas, the state in which it sits. But "[i]f no conflict of law exists on the issues, [the court] need not decide which state's law applies." *CMS Energy Res. Mgmt. Co. v. Quicksilver Res., Inc.*, 2009 WL 1815776, at *8 (Tex. App. June 25, 2009, no pet.) (mem. op.). Because neither party suggests that the laws of Texas and Connecticut conflict in any respect that is pertinent to a contract or guaranty agreement at issue in this case,[9] or to a party's claim or defense, the court need not decide which state's law applies. The court, as have the parties, will cite authorities from Texas courts and the Fifth Circuit.

III

The court turns first to PCLC's claim that it is entitled to recover from Munoz on the Individual Guaranty.

The court will "construe a guaranty as any other contract." *Mid-S. Telecom. Co. v. Best*, 184 S.W.3d 386, 390 (Tex. App. 2006, no pet.). To recover on the Individual Guaranty, PCLC "must establish that: (1) the defendant signed the guaranty agreement; (2) the [plaintiff] is the present holder or owner of the note; and (3) the note is in default." *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1264 (5th Cir. 1994). It is undisputed Munoz signed the Individual Guaranty in 2004, becoming personally liable for the

---

[9]Munoz, for example, concedes that there is no conflict and that the court need not engage in a choice of law analysis. *See* P. Aug. 18, 2009 Br. 16-17 n. 1.

MPCI loan as a surety.  It is also undisputed that PCLC delivered the money borrowed, and that it has remained the owner of the loan. Finally, it is undisputed that MPCI is in default on that loan and that Munoz has not paid off the balance.  Neither party asserts that the Individual Guaranty was invalid for any reason.  Thus the court holds that PCLC has established beyond peradventure the essential elements of its claim that it is entitled to recover from Munoz on the Individual Guaranty.

IV

Munoz seeks to defeat PCLC's claim based on various affirmative defenses and a counterclaim.

A

Each of Munoz's arguments centers on PCLC's failure to inform him of TSPC's financially distressed state at the time the Cross-Collateral Agreement and Consent of Guarantors were executed. Specifically, Munoz maintains that no one from PCLC informed him that TSPC had already defaulted on the TSPC Loan and that PCLC had already sued TSPC in this court to recover on the loan.  He posits that this information was material and adverse, that PCLC breached a duty to disclose the information,[10] and that he is therefore

---

[10]In their briefing, the parties argue extensively over whether PCLC owed a duty to Munoz to inform him of material adverse information.  The court need not resolve this dispute to grant summary judgment in favor of PCLC.  This is so because, as the court explains below, assuming that PCLC owed Munoz such a duty, it is undisputed that PCLC could not have breached the duty in relation to the instant suit, which is limited to seeking to

excused from his obligations under the Individual Guaranty that secured the MPCI loan.

B

Munoz relies extensively on *St. Paul Fire & Marine Insurance Co. v. Commodity Credit Corp.*, 646 F.2d 1064 (5th Cir. June 1981), to support his position. In *St. Paul Fire* the Fifth Circuit described the "general rule" that "the creditor, or obligee, to whom the surety's assurance is given is not bound to disclose to the surety unrequested information concerning the secured transaction." *Id*. at 1072. Unless the creditor is aware that the surety is relying on the creditor for information, or the surety directly requests information, "a creditor cannot be charged with withholding information that could have been discovered by the surety." *Id*. at 1073. Munoz argues that he falls under an exception to the general rule articulated in *St. Paul Fire*:

> the surety has a defense to liability if, before the obligation is undertaken, the creditor knew of facts unknown to the surety and which he had reason to believe were not known to the surety, the facts materially increased the obligor's risk and the creditor had adequate time to disclose them but failed in his responsibility.

*Id*. (citing Restatement of Security § 124 (1941)). "Among the facts that are material to a suretyship transaction is the

---

recover on the Individual Guaranty executed in 2004. The conduct about which Munoz complains in his counterclaim and on which he relies to support his affirmative defenses occurred no sooner than 2007, well after Munoz executed the Individual Guaranty.

financial condition of the principal." *Id.* at 1074. Munoz maintains that *St. Paul Fire* requires that he be discharged from his obligations. Based on important distinctions between *St. Paul Fire* and the present case, the court disagrees.

First, a reasonable trier of fact could not find that the undisclosed facts were material *to the MPCI loan* (the loan at issue here). It could only find that the facts were material to Munoz's guaranty of loans *to TSPC* under the Cross-Collateral Agreement and the Consent of Guarantors. A reasonable trier of fact could not find that TSPC's financial condition had any bearing on Munoz's decision in 2004 to guarantee the MPCI loan. And while TSPC's financial condition might have had an impact on Munoz's decision some years later to enter into the Cross-Collateral Agreement and the Consent of Guarantors, PCLC is not suing Munoz to recover the indebtedness of TSPC (or of TSP Funding). In *St. Paul Fire* the material, withheld information directly affected the loan in default. Here, it is the MPCI loan that is in default and that gives rise to Munoz's liability under the Individual Guaranty rather than under the Cross-Collateral Agreement or Consent of Guarantors.

Second, under *St. Paul Fire* the creditor must know the material facts "before the obligation is undertaken." *St. Paul Fire*, 646 F.2d at 1073. Munoz agreed to become a surety for the MPCI loan at its origination in 2004, years before the merger,

- 10 -

Cross-Collateral Agreement, the Consent of Guarantors, or the relevant financial difficulties of TSPC. A reasonable trier of fact could not find that the February 2008 events surrounding the Cross-Collateral Agreement and Consent of Guarantors affected Munoz's obligations under the 2004 Individual Guaranty. The Cross-Collateral Agreement makes clear that nothing in the agreement disturbs the existing obligations of the parties. The Consent of Guarantors provides that "Cipriano Munoz confirms that [his] Individual Guaranty dated November 29, 2004 guarantying to PCLC the obligations of [MPCI] continues in full force and effect free of defense, set off or counterclaim." D. Aug. 18, 2009 Am. App. 112. In addition, the Consent of Guarantors confirms that "nothing herein shall extend or expand the obligations of guarantor beyond those guarantied obligations existing as of September 12, 2007." *Id.*

Third, *St. Paul Fire* states that the exception to the general rule only applies when the creditor has reason to believe that the surety is unaware of the material information. *St. Paul Fire*, 646 F.2d at 1073. Even assuming that this exception could apply here—where Munoz executed the Individual Guaranty several years before MPCI merged with TSPC—Munoz has not introduced any evidence that would enable a reasonable trier of fact to find that PCLC was aware of material information. Under *St. Paul Fire* the creditor must know of facts that materially increase the obligor's risk.

*Id.* While one such material fact is the financial condition of the principal, the undisclosed facts concerning TSPC's financial condition could not have been material to Munoz's commitment to guarantee the MPCI loan. MPCI's financial condition, not TSPC's, would have been material. And Munoz does not contend that he was unaware of MPCI's financial condition when he signed the Individual Guaranty in 2004.

Accordingly, Munoz's reliance on affirmative defenses and a counterclaim relating to PCLC's duty to inform him of TSPC's financial difficulties fails as a matter of law to defeat his liability on the Individual Guaranty.

V

Munoz also contends that he is excused from liability under the Individual Guaranty because PCLC's conduct impaired the MPCI loan's collateral.

A

Under *St. Paul Fire*, a "creditor may thereafter lose the right to demand its coverage if he impairs any collateral to which the surety could look for reimbursement." *St. Paul Fire*, 646 F.2d at 1073 (citing *United States v. Cont'l Cas. Co.*, 512 F.2d 475, 478 (5th Cir. 1975); Restatement of Security § 132 (1941)). The Restatement of Security § 132 states:

> Where the creditor has security from the
> principal and knows of the surety's
> obligation, the surety's obligation is reduced
> pro tanto if the creditor
> (a) surrenders or releases the security, or
> (b) wilfully or negligently harms it, or
> (c) fails to take reasonable action to
> preserve its value at a time when the surety
> does not have an opportunity to take such
> action.

Restatement of Security § 132 (1941). Although Texas has not specifically adopted § 132, it does recognize the surety defense of impairment of collateral. *See, e.g., T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 223 (Tex. 1992) (recognizing common law defense of impairment of collateral "based on the creditor's obligation to use ordinary care to secure and preserve collateral in its possession from waste, injury, or loss"). "A guarantor is also discharged if a creditor unjustifiably impairs any collateral securing a note by allowing it to be subordinated or used for purposes other than fulfilling the terms of the indebtedness guaranteed." *United States v. Vahlco Corp.*, 800 F.2d 462, 465-66 (5th Cir. 1986).

B

Munoz argues that PCLC's conduct impaired collateral. Specifically, he asserts that, after PCLC sued TSPC and Slagle, PCLC impaired his security by causing the loss of the Textron factoring agreement, thereby placing an increased burden on MPCI's assets as collateral for both loans, and subjecting MPCI to liability for TSPC's current default and any future defaults. The

court concludes that a reasonable trier of fact could not find impairment of collateral in any material sense.

*St. Paul Fire* addresses impairment of "any collateral to which the surety *could look for reimbursement*." *St. Paul Fire*, 646 F.2d at 1073 (emphasis added). The collateral that secured the MPCI loan was the printing press. *See* P. July 2, 2009 App. 15. Under the explicit terms of the Cross-Collateral Agreement, the security interest in collateral granted by that agreement was expressly subject and subordinate to any security interest that PCLC obtained under a prior agreement that specifically described the collateral. This meant that, if MPCI defaulted on the MPCI loan, the proceeds of the disposition of the collateral securing the loan must first be applied to the indebtedness owing pursuant to the MPCI loan; only the surplus would be available to apply to any indebtedness owing under any other agreement. According to the Cross-Collateral Agreement,

> each Obligor hereby grants to PCLC a security
> interest in the Collateral described in all of
> the respective Obligor Agreements with such
> Obligor. This security interest shall be
> subject and subordinate to any security
> interest obtained by PCLC in the Collateral
> pursuant to the applicable Obligor Agreement
> specifically describing such Collateral. In
> the event of a default by an Obligor under an
> Obligor Agreement and the disposition of the
> Collateral described under such Obligor
> Agreement, the proceeds of the disposition of
> such Collateral shall first be applied to the
> indebtedness owing pursuant to the applicable
> Obligor Agreement describing such Collateral
> and only the surplus shall be available to be

- 14 -

applied to any indebtedness owing under any
other Obligor Agreement.

D. Aug. 18, 2009 Am. App. 113.

Therefore, a reasonable trier of fact could not find that, by
means of the Cross-Collateral Agreement, PCLC impaired any
collateral to which Munoz could look for reimbursement of his
obligation with respect to the MPCI loan.  The proceeds from the
disposition of the printing press remained fully available to pay
MPCI's indebtedness on the MPCI loan.  Accordingly, as a matter of
law, PCLC did not allow the printing press to be subordinated or
used for purposes other than fulfilling the terms of the guarantied
indebtedness.[11]

To the extent the Cross-Collateral Agreement impaired *other*
MPCI assets or subjected MPCI to liability for TSPC's debts, this
circumstance is immaterial in the present case.  The other assets
were not collateral for the MPCI loan and thus could not qualify as
"collateral to which the surety could look for reimbursement"
concerning that loan.  And PCLC is suing Munoz to recover on his

---

[11]Additionally, "[t]he defense of impairment of collateral is
based on the creditor's obligation to use ordinary care to secure
and preserve collateral *in its possession* from waste, injury or
loss." *AmWest Sav. Ass'n v. Winchester*, 1998 WL 51849, at *8 (Tex.
App. Feb. 10, 1998, pet. denied) (not designated for publication)
(emphasis in original).  PCLC did not have any control over, or
possession of, the printing press.  There is no evidence that the
printing press was in fact impaired.  There was no actual damage to
the printing press, and because the MPCI loan continued to have
priority over it, it is unclear how the Cross-Collateral Agreement
negatively affected the actual collateral for the MPCI loan at all.

Individual Guaranty of the MPCI loan, not, say, on the Consent of Guarantors related to loans to TSPC.

Munoz has therefore produced no evidence that would enable a reasonable trier of fact to find that PCLC's actions impaired Munoz's collateral *for the MPCI loan*.

VI

Because PCLC has proved its breach of guaranty claim, and Munoz has failed to offer any evidence that would enable a reasonable trier of fact to find in his favor on his affirmative defenses and counterclaim, the court grants summary judgment in favor of PCLC. PCLC is entitled to recover judgment in the sum of $1,792,843.94 as of June 18, 2008, plus interest that has accrued since that date.

PCLC also seeks an award of attorney's fees under the terms of the MPCI loan agreement and under Tex. Civ. Prac. & Remedies Code Ann. § 38.001(8) (Vernon 2008).[12]  The MPCI loan agreement provides:

> In addition, Lender shall have the right to recover from Borrower any expenses paid or incurred by Lender in connection with the enforcement of its rights under this Agreement and the repossession, holding, repair, preparing for sale and subsequent sale, lease or other disposition of the Collateral including attorneys fees as hereafter provided and legal expenses[.]

P. July 2, 2009 App. 11.  PCLC is therefore entitled to recover

---

[12]Section 38.001(8) states that a person may recover attorney's fees if the claim is for "an oral or written contract." Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (Vernon 2008).

reasonable attorney's fees.   PCLC must apply for them under the procedure, and within the time, prescribed by Fed. R. Civ. P. 54(d).

*     *     *

Accordingly, for the reasons explained, the court grants PCLC's July 13, 2009 motion for summary judgment and denies Munoz's August 13, 2009 motion.   PCLC is entitled to recover on Munoz's Individual Guaranty and to dismissal of Munoz's counterclaim.   A judgment in PCLC's favor is being filed contemporaneously with this memorandum opinion and order.

**SO ORDERED.**

November 30, 2009.

SIDNEY A. FITZWATER
CHIEF JUDGE